## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD COLL, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:12-CV-01202 (JCH) |
| v. | : | |
| | : | |
| AARON BOISVERT and | : | FEBRUARY 5, 2014 |
| CHRISTOPHER MAY, | : | |
| Defendants. | : | |

### RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 27)

### I.     INTRODUCTION

Plaintiff Edward Coll ("Coll") has brought a suit under Title 42, United States

Code, section 1983 against defendants Aaron Boisvert and Christopher May based on

an allegation that Boisvert and May subjected him to malicious prosecution in violation

of the Fourth Amendment of the United States Constitution.[1]  Complaint (Doc. No. 1) at

¶ 11.  In response, Boisvert and May have filed this Motion for Summary Judgment

("Def.'s Mot. for Summ. J.") (Doc. No. 27).

### II.     FACTS

Coll is a resident of Barkhamsted, Connecticut.  Defendants' Local Rule 56(a)(1)

Statement ("Defs.' L.R. 56(a)(1) Stmt.") (Doc. No. 27-5) at ¶ 1; Plaintiff's Local Rule

56(a)(2) Statement ("Pl.'s L.R. 56(a)(2) Stmt.") (Doc. No. 29-1) § I at ¶ 1.  He is the

---

[1] Defendants express some confusion about the nature of the action Coll is pursing against them. While they acknowledge that the Complaint brings only a malicious prosecution claim against them, they note that during Coll's deposition, he "made it very clear . . . that he was pursuing an excessive force complaint against an Officer Diaz, who is not named as a defendant in this action."  Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem.") (Doc. No. 27-1) at 2.  However, because the Complaint alleges only a malicious prosecution claim against the defendants named here, and because Coll reaffirms, in his Memorandum opposing the defendants' Motion, that "[t]his is an action for malicious prosecution," the court will only consider the viability of the malicious prosecution claim on summary judgment.  See Complaint (Doc. No. 1) at ¶¶ 4, 11; Plaintiff Brief in Opposition to Motion for Summary Judgment ("Pl.'s Mem.") (Doc. No. 29) at 1.

1

founder and director of the Revitalization Corps, which he describes as a domestic Peace Corps. Id.  At the relevant time, Coll was 72 years old and Boisvert and May were Hartford police officers.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 2; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 2, § II at ¶ 8.  Coll was arrested, without a warrant, on July 17, 2009, in Hartford, Connecticut.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 3; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 3.  He was charged with interfering with an officer, among other offenses, in violation of Connecticut General Statutes, section 53a-167a.  Id.

     A.    <u>Incident Report and Supplemental Report</u>

     One month after Coll's arrest, May prepared a Hartford Police Department ("HPD") Incident Report detailing the arrest.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 4; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 4.  Boisvert is listed in the Incident Report as the assisting officer. Id.  The Incident Report relates that on July 17, 2009, Boisvert received a call from the security supervisor of the property, known as the Gold Building, located at 775 Main Street in Hartford; the supervisor reported that a man, later identified as Coll, caused a disturbance in the front lobby of the Gold Building, was told to leave, and stormed out of the building.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 5; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 5.  The security supervisor requested that the HPD contact Coll to inform him that, if he returned to the building, the security supervisor would insist on police intervention.  Id.; Def.'s Mot. for Summ. J. at Ex. B (HPD Incident Report).  Upon arriving at the Gold Building, Boisvert and May observed Coll walking south on Main Street; Boisvert informed Coll that he would not be allowed back in the Gold Building and that, if he returned to the building, he would face criminal trespass charges.  Def.'s Mot. for Summ. J. at Ex. B; Defs.' L.R. 56(a)(1) Stmt. at ¶ 5; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 5.

Several minutes later, Bosivert received another telephone call from the security supervisor, who told Boisvert that he had received a report that Coll was on the second floor of the building causing another disturbance, including using profanity in front of children, accusing a proprietor of being a racist, and refusing to leave.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 5; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 5.  The security supervisor requested that Coll be arrested.  Id.

The Incident Report further states that May, finding Coll still walking south on Main Street, approached Coll and informed him that he was being arrested for criminal trespass and breach of peace.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 6; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 6.  Coll responded, "You can't arrest me—I can go wherever I want."  Id. May attempted to guide Coll's hands behind his back, and Coll swung his body around, hit May in the head with his right fist, and then attempted to grab May's uniform shirt. Id.  May grabbed Coll around his torso and brought him to the ground, where Coll continued to reuse to obey commands to put his hands behind his back.  Id.; Def.'s Mot. for Summ. J. at Ex. B.[2]  After Boisvert physically pulled Coll's arms behind his back, May handcuffed Coll.  Def.'s Mot. for Summ. J. at Ex. B; Defs.' L.R. 56(a)(1) Stmt. at ¶ 6; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 6.

The Incident Report concludes with May writing that, "[b]ased on the aforementioned facts, statements, and circumstances, I charged Edward Coll born on 12-30-39, with violation of Connecticut General Statutes[,] §53a-107 Criminal Trespass

---

[2] There appears to be a typo in the Defendants' Local Rule 56(a)(1) Statement.  The Statement reports that "Officer May grabbed Plaintiff around his torso and brought him to the ground; Plaintiff continued to obey commands to put his hands behind his back."  Defendants' Local Rule 56(a)(1) Statement ("Defs.' L.R. 56(a)(1) Stmt.") (Doc. No. 27-5) at ¶ 6.   However, the Incident Report, which is the only source the Statement cites for its narrative of Coll's arrest, states that "[o]nce on the ground, Coll, again, refused to obey lawful commands to put his hands behind his back and stop fighting with police." Defendants' Motion for Summary Judgment ("Defs.' Mot. for Summ. J.") (Doc. No. 27) at Ex. B.

in the First Degree; [§]53a-181 Breach of Peace in the Second Degree; and [§]53a-167a Interfering with Police."  Defs.' L.R. 56(a)(1) Stmt. at ¶ 7; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 7.

Another HPD police officer, Kevin O'Brien, prepared a Supplemental Report that relates that, on July 17, 2009, he was issuing parking tickets on Main Street when he observed a white male strike May in the forehead.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 9; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 9.  O'Brien's report also states that May and Boisvert "effectively took the white male into custody."  Defs.' L.R. 56(a)(1) Stmt. at ¶ 9; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 9; Def.'s Mot. for Summ. J. at Ex. C.

Coll alleges that the Incident Report prepared by May and Boisvert is false, and that it contains lies.  Pl.'s L.R. 56(a)(2) Stmt. § II at ¶¶ 5-6.  Coll claims that he did not resist arrest in any way, that he did not use profanity or swear words, and that he did not curse in front of a woman with small children.  Pl.'s L.R. 56(a)(2) Stmt. § II at ¶¶ 7, 10-11.

B.    Coll's Deposition Testimony

While the parties do not dispute that the Incident Report includes the aforementioned narrative of Coll's arrest, Coll does appear to dispute the truth of this narrative.  Coll explains that, on July 17, 2009, he went to the Gold Building to ask for the Hartford Jaycees' help in improving the quality of downtown Hartford; he did not have an appointment.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 10; Pl.'s. L.R. 56(a)(2) Stmt. at ¶ § I at 10, § II at ¶ 3.  He testifies that he could not recall whether he had told anyone that the Jaycees were racists, as the security supervisor reported to Boisvert, but that he "might very well have said that the U.S. Jaycee's [sic] are racists because [he] think[s]

4

they are."  Defs.' L.R. 56(a)(1) Stmt. at ¶ 11; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 11.  Coll

denies that he raised his voice to the Jaycees or that he was "disgusted with them," id.,

but in support of his denial, he cites to an exchange in the deposition transcript wherein

he agrees that he "[p]robably raised [his] voice a little," and he states that he "was pretty

disgusted, too."  Pl.'s L.R. 56(a)(2) Stmt. § I at ¶ 11; Def.'s Mot. for Summ. J. at Ex. 3,

at 81:22-25.  Coll does testify, however, that he did not "shout at anybody."  Def.'s Mot.

for Summ. J. at Ex. B, at 82:1-2.  Coll states that he could not recall whether he used

profanities when at the Jaycees, or whether children were present when the Incident

Report alleges that he did so.  Def.'s Mot. for Summ. J. at Ex. B, at 81:22-25; Defs.' L.R.

56(a)(1) Stmt. at ¶ 12.[3]  Coll does not "recall too much about" whether any Gold Building

personnel told him to leave the building, but does "recall getting out of there."  Def.'s

Mot. for Summ. J. at Ex. B, at 19:4-7; Defs.' L.R. 56(a)(1) Stmt. at ¶ 13.[4]  Coll further

testified that he did not recall whether anyone informed him that he was not permitted

back into the Gold Building; whether he was in the Gold Building once or twice on July

17, 2009; or whether he returned to the Gold Building after he had been told not to

return there.[5]  Def.'s Mot. for Summ. J. at Ex. B, at 22:2-19, 75:7-25, 80:21-25, 81:1-6;

Defs.' L.R. 56(a)(1) Stmt. at ¶ 13; Pl.'s L.R. 56(a)(2) Stmt. § I at ¶ 13.

---

[3] In his Local Rule 56(a)(2) Statement, Coll asserts that he, in effect, denied using profanities at the Jaycees.  Plaintiff's Local Rule 56(a)(2) Statement ("Pl.'s L.R. 56(a)(2) Stmt.") (Doc. No. 29-1) § I at ¶ 12.  However, in support of this denial, he cites two passages in his deposition wherein he states only that he does not recall using profanities.  See Defs.' Mot. for Summ. J. at Ex. B, at 31:10-25, 82:10-12.

[4] Coll claims that he denied that he was ordered to leave the Gold Building and not return, and that the defendants' statement that he could not recall whether he was told not to return to the building is misleading.  Pl.'s L.R. 56(a)(2) Stmt. § I at ¶ 13.  However, in support of this claim, Coll again cites to a portion of his deposition that paragraph 13 of the defendants' Local Rule 56(a)(1) Statement nearly reproduces verbatim.  Id.; see Def.'s Mot. for Summ. J. at Ex. B, at 19:4-7.

[5] Coll claims that he denied that anyone told him that he could not reenter the Gold Building, or that he returned to the building after he had been told not to return there, and states that the defendants'

After leaving the Gold Building, Coll was arrested as he was walking to his office at Central Baptist Church in Hartford.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 15; Pl.'s L.R. 56(a)(2) Stmt. § I at ¶ 15.  Coll claims that an "Officer Diaz" assaulted him on Main Street in Hartford, not far south of the Gold Building.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 16; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 16.  As a result of Diaz knocking him to the ground, Coll alleges, he sustained physical injuries.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 17; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 17.  Coll claims to have documented these injuries by having photos taken on either July 17, 2009, or within a few days afterwards.  Id.  Coll testified that Bosivert and May "weren't even around" when Diaz allegedly knocked him to the ground.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 18; Pl.'s L.R. 56(a)(2) Stmt. § I at ¶ 18.  Coll also testified that he "is not concerned" about Boisvert and May.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 19; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 19.  Coll does not believe that Boisvert or May knocked him to the ground.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 20; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 20.  Coll refused an ambulance, and he recalls being booked.  Defs.' L.R. 56(a)(1) Stmt. at ¶¶ 23-24; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶¶ 23-24.

C.    Coll's Prosecution

Coll has testified that he does not know whether Boisvert or May did anything to prosecute him; however, he asserts that his personal knowledge on this question is irrelevant, as it is stipulated that Boisvert and May prepared and filed the reports that caused his prosecution.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 21; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 21.  The parties dispute whether Coll believed, at his deposition, that he was suing

---

statements that he could not recall whether he had done either of these things is misleading. Pl.'s L.R. 56(a)(2) Stmt. § I at ¶ 14.  Coll's citations, however, only corroborate that he testified that he could not recall whether either of these events occurred.  Def.'s Mot. for Summ. J. at Ex. B, at 22:2-19, 80:21-25, 81:1-6.  Further, Coll himself states, in his own statement of material facts, that "[h]e was told not to return to the Gold Building."  Pl.'s L.R. 56(a)(2) Stmt. § I at ¶ 14, § II at, ¶ 4.

Boisvert or May.  Defendants assert that Coll did not believe that he was suing either of

them; Coll denies that the transcript contains any such statement.  Defs.' L.R. 56(a)(1)

Stmt. at ¶ 22; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 22.

Coll estimates that he had to appear in court approximately 10 times; he recalls

that he appeared in both G.A. 14 and Hartford Community Court.  Defs.' L.R. 56(a)(1)

Stmt. at ¶ 25; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 25.  Coll could not recall the date on

which the criminal charges arising out of his July 17, 2009 arrest were nolled at the time

he answered his interrogatories.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 26; Pl.'s. L.R. 56(a)(2)

Stmt. § I at ¶ 26.  In his statement of material facts, however, Coll claims that his

charges were unconditionally nolled on September 2, 2010.  Pl.'s. L.R. 56(a)(2) Stmt. §

II at ¶ 1.  Coll was not required to pay any money to charity, agree that there was

probable cause for his arrest, or do any community service in exchange for the nolle of

his criminal charges.  Def.'s Mot. for Summ. J. at Ex. B, at 55:12-25, 56:1-14; Defs.' L.R.

56(a)(1) Stmt. at ¶ 27; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 27.  Coll does not have any

documents "relating to or referring to" his prosecution for the criminal charges arising

out of his July 17, 2009 arrest, the disposition of such criminal charges, or any

community service or other tasks that he was required to perform in connection with the

nolle of these criminal charges.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 28; Pl.'s. L.R. 56(a)(2)

Stmt. § I at ¶ 28.  Coll denies, however, that he was ever required to perform any

community service or other tasks in connection with the nolle.  Pl.'s. L.R. 56(a)(2) Stmt.

§ I at ¶ 28.  Coll does not recall the prosecutor who nolled his criminal charges.  Defs.'

L.R. 56(a)(1) Stmt. at ¶ 29; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 29.   He did not file any

complaint with the Hartford Police Department concerning his arrest.  Defs.' L.R. 56(a)(1) Stmt. at ¶ 30; Pl.'s. L.R. 56(a)(2) Stmt. § I at ¶ 30.

### III.    STANDARD OF REVIEW

A motion for summary judgment is properly granted only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir.2011). Thus, the role of the district court in deciding a summary judgment motion "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." Id.  In making this determination, the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir.2013).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir.2010).  Once the moving party has satisfied that burden, to defeat the motion "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir.2009) (quoting Fed. R. Civ. P. 56(e)).  "For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor." Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co., 421 F. App'x 52, 53 (2d Cir.2011); see also Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir.2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (stating that the non-moving party must point to more than a mere "scintilla" of evidence in its favor).  "[U]nsupported allegations

8

do not create a material issue of fact." <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir.2000).

### IV.    DISCUSSION

#### A.    <u>Statute of Limitations</u>

Defendants first argue that the statute of limitations for section 1983 claims bars Coll's malicious prosecution action.  Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem.") (Doc. No. 27-1) at 5.

As Congress did not enact a statute of limitations governing section 1983 actions, courts must borrow the "most appropriate" or "most analogous" statute of limitations from state law.  <u>Lounsbury v. Jeffries</u>, 25 F.3d 131, 133 (2d Cir. 1994) (quotation marks and citations omitted).  The Second Circuit has determined that a state's personal-injury statute of limitations should be applied to all section 1983 claims, and that, for section 1983 claims arising in Connecticut, the appropriate statute is Connecticut General Statutes, section 52-577.  <u>Id.</u> at 133, 134.  Section 52-577 sets a three-year limitation period running from "the date of the act or omission complained of." Conn. Gen. Stat. § 52-577.

Federal law, however, governs the accrual of claims brought under section 1983. <u>Veal v. Geraci</u>, 23 F.3d 722, 724 (2d Cir. 1994).  A section 1983 claim "accrues once the plaintiff knows or has reason to know of the injury which is the basis of his action." <u>Id.</u> (quotation marks and citation omitted).  This court has previously held that "[m]alicious prosecution claims cover the time beginning with the issuance of process or arraignment . . . and in Connecticut, end only with the resolution of the underlying

criminal charges." <u>Manson v. Narus</u>, No.3:08-cv-1, 2008 WL 4911152, at *2 (D. Conn. Nov. 11, 2008) (quotation marks and internal citation omitted).

Defendants argue that, when a malicious prosecution claim is brought against a police officer, the statute of limitations "should run from the time that one or both of [the officers] made the arrest and filed an arrest report." Defs.' Mem. at 8. Defendants, however, cite nothing to support this proposition, or to counter the Second Circuit's determination that the statute of limitations for malicious prosecution claims starts to run "only when the underlying criminal action is conclusively terminated," <u>not</u> at the time of arrest. <u>Murphy v. Lynn</u>, 53 F.3d 547, 548 (2d Cir. 1995). Given that the tort of malicious prosecution "remedies detention accompanied . . . by the wrongful institution of legal process," <u>Wallace v. Kato</u>, 549 U.S. 384, 390 (2007), and a plaintiff cannot know whether he will have a cause of action for malicious prosecution until after the termination of criminal charges against him, the accrual of a malicious prosecution claim is based on when the charges are resolved, not on whether the state actor accused of the malicious prosecution is an arresting officer. <u>Manson</u>, 2008 WL 4911152 at *2.

Coll has provided evidence that his criminal charges were resolved on September 2, 2010, in an unconditional <u>nolle</u>.[6] Pl.'s. L.R. 56(a)(2) Stmt. § II at ¶ 1. While defendants note that Coll's "answers to interrogatories and deposition testimony are inconsistent and hazy" on when exactly Coll's criminal charges were disposed of,

---

[6] In support of this statement, Coll has submitted an affidavit from his counsel in this case, Attorney John Williams. Pl.'s. L.R. 56(a)(2) Stmt. § II at ¶ 1. Given this, defendants are correct to observe that "there may be issues regarding [Attorney Williams'] ability to represent [Coll] should this matter proceed to trial." Defs.' Reply at 2. <u>See</u> District of Connecticut Local Rule 83.13 (prohibiting counsel from representing a party in a proceeding where counsel may be called as a witness); <u>see also</u> <u>Karlen v. Westport Bd. of Educ.</u>, No. 3:07-cv-309, 2009 WL 801632 (D. Conn. Mar. 24, 2009) (disqualifying counsel who was also a material witness to disputed issue of fact to which he was expected to testify at trial).

Defs.' Reply at 1, they have submitted no evidence that contradicts or otherwise undermines Coll's proffer.  As the court must construe all ambiguities in this case in favor of Coll, the non-movant, the court accepts September 2, 2012 as the date Coll's charges were nolled.  Coll filed this suit on August 17, 2012, just under two years after the disposition of his criminal charges.  Pl.'s Mem. at 3.  Accordingly, his section 1983 claim for malicious prosecution is not time barred.

      B.    Qualified Immunity

      Defendants assert that summary judgment must be entered in their favor because they are entitled to qualified immunity.  Defs.' Mem. at 8.  They argue that Coll cannot establish that the defendants' arrest and prosecution of him meets the elements of a malicious prosecution claim and that, even if Coll succeeds in making such a claim, he cannot show that defendants were not objectively reasonable in prosecuting him.  Id. at 10, 21.

      A government official is entitled to qualified immunity from liability for civil damages unless his or her conduct violated a clearly established constitutional right. Pearson v. Callahan, 555 U.S. 223, 232 (2009).  To determine whether a defendant has qualified immunity, the court must decide: 1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, 2) whether the right at issue was clearly established at the time of the defendant's alleged  misconduct, and 3) whether, if the plaintiff had a clearly established, constitutionally protected right that was violated by the defendant, the defendant's actions in violating this right were not objectively reasonable.  Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003).  A defendant must be given qualified immunity when a reasonable jury, despite

looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff, could not conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right.  Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999).  Summary judgment on the existence of qualified immunity is inappropriate when there are facts in dispute that are material to the determination of reasonableness.  Id.

"The right to be free from arrest or prosecution in the absence of probable cause is a long established constitutional right."  Ricciuit v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997).  Thus, the second prong of the qualified immunity inquiry is satisfied here.  The court, then, must consider whether a reasonable jury could, from the facts alleged by Coll, conclude that defendants violated this right and that their violation was not objectively reasonable.

To prove a malicious prosecution claim under Connecticut law, a plaintiff must show that: "1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; 2) the criminal proceedings have terminated in favor of the plaintiff; 3) the defendant acted without probable cause; and 4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice."  McHale v. W.B.S. Corp., 187 Conn. 444, 447 (1982); accord Manson, 2008 WL 4911152 at *3; see also Conway v. Village of Mount Kisco, 750 F.2d 205, 214 (2d Cir. 1984) (state law defines elements of a malicious prosecution claim asserted under section 1983). Defendants contend that they are entitled to qualified immunity because Coll cannot show that Boisvert was sufficiently involved in Coll's prosecution, that the criminal

proceedings against him terminated in his favor, or that they did not have probable cause to prosecute Coll.

    1.  Defendants' Personal Involvement in Coll's Prosecution

Defendants concede that May initiated Coll's prosecution.  Defs.' Mem. at 10. However, defendants argue that Boisvert lacked sufficient involvement in Coll's prosecution to be liable for malicious prosecution because, though Boisvert was the assisting officer who helped secure Coll in handcuffs, he was not the investigating officer and did not charge Coll with anything.  Id.  Coll contends that the presence of Boisvert's signature on the Incident Report and Boisvert's involvement in his arrest render him jointly liable with May.  Pl.'s Mem. at 5.

    "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991) (quotation marks omitted).  Personal involvement "encompasses a police officer's 'affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.'" Noga v. City of Schenectady Police Officers, 169 F.Supp.2d 83, 88 (N.D.N.Y. 2001) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).  For a police officer defendant to be liable for malicious prosecution, the officer "must have [had] knowledge or reason to know that a citizen has been . . . maliciously prosecuted and a 'realistic opportunity to intervene to prevent harm.'" Id. (quoting Anderson, 17 F.3d at 557). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering

all the evidence, a reasonable jury could not possibly conclude otherwise." Anderson, 17 F.3d at 557.

Defendants' contention that, because Boisvert was not the investigating officer in Coll's arrest and did not file criminal charges against Coll, he cannot be liable for Coll's allegations of malicious prosecution, is incorrect. That Boisvert is identified as the arresting officer in the Incident Report is not proof that he had no role in prosecuting Coll, and which officer effected charges against Coll is unclear from the defendants' proffer. Compare with Brandon v. City of New York, 705 F.Supp.2d 261, 274-75 (S.D.N.Y. 2010) (finding that officers who did not draft arrest paperwork, swear to the criminal complaint, or testify before the grand jury, lacked requisite personal involvement in the post-arrest conduct that led to the plaintiff's prosecution to be liable for it under section 1983). Further, defendants have submitted no evidence that suggests that Boisvert was at all incapable of preventing the allegedly malicious prosecution from going into effect, and a jury could easily infer from defendants' concession—that Boisvert participated in Coll's arrest—that Boisvert had reason to know that Coll would be maliciously prosecuted. Thus, there are issues of material fact that prevent the entry of summary judgment on the issue of whether Boisvert was sufficiently personally involved to be liable for Coll's charge of malicious prosecution.

2. Favorable Termination of Criminal Proceedings

The Second Circuit has concluded that, under Connecticut law, a nolle plea qualifies as favorable termination for the purposes of a malicious prosecution claim when the abandonment of the prosecution produced by the nolle was not conditioned

on some arrangement with the defendant.  <u>Roberts v. Babkiewicz</u>, 582 F.3d 418, 420-21 (2d Cir. 2009).

Defendants assert that Coll cannot prove that the charges against him were nolled, and thus cannot establish that the criminal proceedings against him were favorably terminated.  Defs.' Mem. at 13-14.  Neither party has submitted an official record of the state court criminal proceedings that Coll alleges terminated in his favor.

The only evidence in the record regarding the disposition of Coll's criminal case is testimony from Coll and his counsel in the criminal case.[7]   Coll's attorney has testified that the <u>nolle</u> of his charges was unconditional, <u>see</u> Pl.'s L.R. 56(a)(2) Stmt. § II at ¶ 1, and Coll has denied that he was required to pay any money to charity, agree that there was probable cause for his arrest, or do any community service in exchange for the <u>nolle</u>.  Defs.' Mot. for Summ. J. at Ex. B at 55:12-25, 56:1-14; Defs.' L.R. 56(a)(1) Stmt. at ¶ 27; Pl.'s L.R. 56(a)(2) Stmt. § I at ¶ 27.  As defendants have provided nothing that rebuts this testimony, a jury could infer from it that the <u>nolle</u> of Coll's charges was granted without consideration.  Coll's inability to remember the date his charges were nolled or the prosecutor who nolled the charges does not contradict his account of the disposition of his criminal charges, despite defendants' argument to the contrary.  <u>See</u> Defs.' Mem. at 13.  Though defendants insist that crediting Coll's account here would only "reward . . . his delay in bringing this action," because, they allege, Coll waited until after the criminal charges were erased to file suit, Defs.' Mem. at 13-14, the court defers to the statute of limitations for malicious prosecution as the appropriate mechanism for penalizing delay in such cases.

---

[7] His counsel in the criminal case was Attorney John Williams, who also represents Coll in this challenge.  <u>See</u> <u>supra</u> note 8.

3.  Probable Cause

Under Connecticut law, a plaintiff claiming malicious prosecution must show that no probable cause for the prosecution existed.  Garcia v. Hebert, No. 3:08cv95, 2013 WL 1294412, at *7 (D.Conn. Mar. 28, 2013).  Probable cause is an absolute defense to charges of malicious prosecution.  Id.  Probable cause for an arrest "requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted).  In determining whether probable cause exists, a court "must consider those facts available to the officer at the time of the arrest and immediately before it, as probable cause does not require absolute certainty."  Id. (quotation marks and citations omitted).  "Courts should look to the totality of the circumstances" in assessing allegations for probable cause.  Id. (internal quotation marks and citations omitted).

In the context of alleged malicious prosecution, probable cause has been "described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty."  Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003).  Probable cause to prosecute "is distinct from probable cause to arrest . . . and is assessed in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of the arrest."  Sankar v. City of New York, 867 F.Supp.2d 297, 311 (E.D.N.Y. 2012) (internal quotation marks and citations omitted).

Defendants claim that no genuine issue of material fact exists as to whether they had probable cause to arrest Coll on the three offenses with which he was charged.

16

Defs.' Mem. at 15, 16-19.  Coll, however, alleges only that defendants lacked probable

cause for prosecuting him on the charge of interfering with an officer.  Pl.'s Mem. at 6-7.

      Defendants first argue that Coll's failure to explicitly allege that defendants acted

without probable cause in prosecuting him is fatal to his claim, and that his allegations

of innocence do not cure this deficiency.  Defs.' Mem. at 14-15.  The court, however,

reads an allegation of the absence of probable cause in the Complaint's charge that

"defendants prepared a false official police report designed to conceal and justify their

wrongful conduct and to create the false impression that the plaintiff in fact had

committed the said crime." Complaint at ¶ 8.  The authority defendants cite for their

assertion that a lack of probable cause must be explicitly alleged, Manson, actually

supports the court's reading.  In Manson, this court similarly found that allegations of

false statements in a malicious prosecution claim could be read to suggest an absence

of probable cause.  2008 WL 4911152 at *4.  But in Manson, the court also read the

plaintiff's allegations to suggest that probable cause did exist at the start of his

prosecution, and thus that plaintiff had failed to offer allegations necessary to render his

claim plausible.  Id.  Coll's Complaint does not suffer from comparable inconsistency.

      The court further concludes that, given the contradictory accounts of Coll's arrest

offered by each party and the lack of irrefutable evidence in support of either account,

whether defendants had probable cause to prosecute Coll for interfering with an officer

cannot be resolved on summary judgment.  Though the Incident Report submitted by

defendants recounts that Coll began to resist arrest after being informed by Boisvert

and May he was being arrested for criminal trespass and breach of peace, Coll claims

that he did not attempt to resist arrest, and instead that he was attacked without

provocation by Officer Diaz.  Coll also alleges that the Incident Report was falsified by defendants as a cover for Diaz's attack.  The Supplemental Report prepared by O'Brien, wherein O'Brien describes seeing Coll strike May in the forehead, but does not specify whether this alleged assault occurred before or during Coll's arrest, does not conclusively establish that Coll resisted arrest.  See Ostroski v. Town of Southold, 443 F.Supp.2d 325, 339 (E.D.N.Y. 2006) (finding that, where plaintiff was alleged to have pushed an officer prior to arrest but claimed that she did nothing to resist when being arrested, whether probable cause existed was a disputed issue of material fact).  If Coll's claims that he did nothing to resist arrest, and that the Incident Report prepared by defendants was fabricated, are taken as true, it would not be objectively reasonable for defendants to have believed that they had probable cause to prosecute Coll on the charge of interfering with an officer.

As there are disputed issue of material facts as to whether Boisvert was sufficiently involved in Coll's prosecution, whether Coll's charges were favorably terminated, and whether probable cause existed for defendants' prosecution of Coll for interfering with an officer, defendants are not entitled to qualified immunity as a matter of law.  See Ostroski, 443 F.Supp.2d at 339-40 (listing cases where disputed issues of facts preclude a finding of qualified immunity as a matter of law).

## V.    CONCLUSION

For the aforementioned reasons, defendants' Motion for Summary Judgment (Doc. No. 27) is **DENIED**.

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of February, 2014.

___/s/ Janet C. Hall _____
Janet C. Hall
United States District Judge